**In re Danny DUMOND, Debtor.**

**Bankruptcy No. 93–20023.**

United States Bankruptcy Court,
D. Maine.

Sept. 8, 1993.

Stephen C. Chute, Portland, ME, for debtor.

David S. Turesky, Portland, ME, for Hibiscus.

## MEMORANDUM OF DECISION

JAMES A. GOODMAN, Chief Judge.

Danny Dumond (the "Debtor") is a Chapter 11 Debtor who owns and operates a business in Scarborough, Maine known as the Goldstein Steel Company. In 1987, the Debtor became involved in litigation with the Hibiscus Corporation ("Hibiscus"), a corporation sharing a common boundary with the Debtor's business. On June 10, 1992, Hibiscus obtained a judgment against the Debtor for trespass in the amount of $18,198.51 in Maine Superior Court. The Superior Court subsequently issued a writ of execution for the amount of the judgment in favor of Hibiscus. The Debtor did not satisfy the judgment but, in September of 1992, entered into a voluntary order of payment (the "Order of Payment") with Hibiscus, which was approved by the Cumberland County District Court.

The Order of Payment contained the following relevant terms:

Upon Agreement of the Parties, it is hereby ORDERED that Defendant, Danny Dumond, pay the judgment of the above Plaintiffs as follows:

. . . . .

3. Danny Dumond further agrees to pay off the amended judgment of the Plaintiffs dated July 10, 1992 in full, including pre- and post-judgment interest, and reasonable counsel fees, by October 20, 1992;

. . . . .

5. If the Amended Judgment is not paid in full by October 20, 1992, the Parties agree and the Court hereby orders the sale pursuant to 14 M.R.S.A. § 3131(2) of certain of Mr. Dumond's properties described below without the need of any further court hearings. This order shall be treated as a sale order issued October 21, 1992.

.  .  .  .  .

6. (b) The Parties understand and agree that the above described parcels of land are not subject to any of the statutory exemptions available to Mr. Dumond under 14 M.R.S.A. § 4421–4426;

(c) Pursuant to 14 M.R.S.A. § 3131(3), Plaintiffs will give notice of the sale to any person who has a security interest, mortgage lien, encumbrance, or other interest in the property when the interest is recorded, possessory or of which the judgment creditor has actual knowledge, as well as to the judgment debtor. Notice shall be provided in accordance with 11 M.R.S.A. § 9–504(3);

The Debtor was unable to comply with the October 20 deadline for payment and, as a result, filed a petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code. Hibiscus filed a proof of claim, listing its secured claim in the amount of $13,997.76 plus accruing interest and attorney's fees. However, the parties have stipulated that the amount due as of the date of filing the petition was $9,039.08, and it is undisputed that Hibiscus' claim is oversecured. The Debtor has objected to Hibiscus' claim only insofar as it includes interest above the federal judgment rate and attorney's fees, which both raise issues under 11 U.S.C. § 506(b).

▆▆ Before addressing the issues raised by the Debtor's objection, however, it is necessary to note that Hibiscus' claim in the bankruptcy estate arose not from the judgment, but rather from a consensual order of payment which was approved by the district court. Given the comprehensive nature of the agreement, it is clear that once the parties entered into the Order of Payment, that instrument supplanted the terms of the judgment and writ of execution, thereby providing Hibiscus with an independent basis to claim against the Debtor. To illustrate, if subsequent to the approval of the Order of Payment, Hibiscus had attempted to collect its judgment in state court, Hibiscus would have obviously proceeded on the Order of Payment. This is consistent with the underlying principles of the doctrine of merger as stated by the Bankruptcy Court for the Southern District of Ohio:

> The doctrine of merger is one aspect of the larger principle of res judicata. 46 Am.Jur.2d Judgments § 383 (1969). The general rule of merger is that when a valid and final personal judgment is rendered in favor of the plaintiff, the plaintiff cannot maintain a subsequent action on any part of the original claim. Restatement, Second, Judgments § 18 (1980). The original claim merges into the final judgment. The effect of the merger is that the old debt ceases to exist and the new judgment debt takes its place. The judgment becomes "the evidence of the debt, or the sole test of the rights of the parties.…" 46 Am. Jur.2d Judgments § 390 (1969) (footnotes omitted).

*Matter of Schwartz*, 77 B.R. 177 (Bankr. S.D.Ohio 1987), *aff'd*, 87 B.R. 41 (S.D.Ohio 1988), *quoting*, *In re Schlecht*, 36 B.R. 236 (Bankr.D.Alaska 1983).

Hence, although the debt in the present case originally arose from a judgment, Hibiscus' claim in the Debtor's bankruptcy estate arises from the consensual Order of Payment. The issues in this case, therefore, must be analyzed in view of the fact that interest and attorney's fees were provided for under an agreement.

*Attorney's Fees*

▆▆ The first issue to be resolved is whether Hibiscus is entitled to attorney's fees as provided under the agreement, pursuant to 11 U.S.C. § 506(b). Initially, it must be noted that although the voluntary Order of Payment granted Hibiscus attorney's fees, it did not expressly state a relevant time period. However, Hibiscus has asserted that the language of the Or-

der of Payment granted it attorney's fees both before and after the entry of the Order of Payment, and the Debtor has not disputed that assertion. As Hibiscus' interpretation is reasonable under the circumstances, the Court hereby makes a finding of fact that the granting of attorney's fees in the agreement included fees incurred for collection after the entry of the Order of Payment.

Section 506(b) expressly allows attorney's fees to oversecured claimants where the fees were provided for in the agreement under which the claim arose. Accordingly, courts have consistently allowed oversecured claimants attorney's fees provided for under security agreements. *See, e.g. In re Campbell,* 138 B.R. 184 (Bankr. S.D.Ohio 1991); *In re Nordmann,* 56 B.R. 634 (Bankr.D.S.C.1986); *In re Rutherford,* 28 B.R. 899 (Bankr.N.D.Ill.1983). There is no basis to distinguish the present case, since the agreement here is no less binding under state law than an ordinary contract. Accordingly, Hibiscus is entitled to reasonable attorney's fees for the cost of collection of this debt.

*Rate of Interest*

■ The second issue to be considered is which rate of interest applies to an oversecured claim in a Chapter 11 estate. The Debtor contends the federal judgment rate is the most appropriate, while Hibiscus argues that it is entitled to the state judgment rate. As § 506(b) does not specify a rate of interest, it is appropriate to look to pre-Code practice for the applicable rate. *See, generally, U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (stating that the Court is reluctant to alter pre-Code practice). Under pre-Code practice, "[t]he majority of courts utilized the contract rate of interest when allowing an oversecured creditor to collect post-petition interest pursuant to § 506(b)." *In re Laymon,* 958 F.2d 72, 75 (5th Cir.1992), *quoting,* 3 COLLIER ON BANKRUPTCY ¶ 506.05, at 506–46. Applying the rate provided for in an agreement is also consistent with the principle announced in *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), that "[c]ongress has generally left the determination of property rights in the assets of a bankrupt's estate to state law. Property interests are created and defined by state law." *Id.* at 54–55, 99 S.Ct. at 917–18. Furthermore, this issue has been addressed by courts in the context of contract claims. This Court is persuaded by those cases in which the interest rate provided for in an agreement is applied in bankruptcy. *See, e.g. In re Laymon,* 958 F.2d 72 (5th Cir.1992); *In re Courtland Estates Corp.,* 144 B.R. 5 (Bankr.D.Mass.1992); *Matter of Gladdin,* 107 B.R. 803 (Bankr.D.Ga.1989).

For the foregoing reasons, this Court finds that the interest rate provided under the Order of Payment is applicable here. Again, Hibiscus has asserted, and the Debtor has not disputed, that the agreement provided for interest at the state judgment rate pursuant to 14 M.R.S.A. § 1602–A. Bearing in mind that interest was granted on a judgment debt under the agreement, the Court finds that the interest rate established by the Order of Payment is the state judgment rate of 15%.

Some courts have taken a flexible approach recognizing that there may be situations in which "the higher rate would produce an inequitable or unconscionable result, so as to require disallowance thereof." *Laymon, supra,* at 75, *quoting, In re Sheppley & Co.,* 62 B.R. 271, 277 (Bankr. N.D.Iowa 1986). However, in the present Chapter 11 case, the Debtor is solvent, all creditors are to be paid in full under the plan, and the unsecured creditors have already been paid under the confirmed plan. Consequently, there is no equitable reason that militates against allowing interest at the rate provided for under the parties' agreement.

Accordingly, the Debtor's objection to claim is overruled; Hibiscus shall be allowed its attorney's fees, and its claim shall include interest at the state judgment rate.

The foregoing constitutes findings of fact and conclusions of law pursuant to F.R.Bky.P. 7052.

An appropriate order shall enter.

## ORDER

In accordance with a Memorandum of Decision of even date herewith, it is hereby

ORDERED that the Debtor's objection to the claim of the Hibiscus Corporation ("Hibiscus") is overruled; and it is further

ORDERED that, within 10 business days from the entry of this Order, the parties shall file a written stipulation as to the amount of interest and reasonable attorney's fees to be included in Hibiscus' claim; and it is further

ORDERED that, upon the parties' failure to stipulate, Hibiscus shall be responsible for scheduling an evidentiary hearing on the matter.